**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Cynthia Q., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 22 C 50401 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cynthia Q. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for disability insurance benefits.[2] For the reasons set forth below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

**BACKGROUND**

Plaintiff filed a claim for Disability Insurance Benefits in August 2020, citing her onset date of disability as April 1, 2020. R. 20. Her date last insured was March 31, 2021. R. 22. Her claims were denied at the initial and reconsideration levels. R. 87, 98. The ALJ held a hearing in December 2021, and issued an unfavorable decision in January 2022. R. 17. The Appeals Council denied Plaintiff's request for review in August 2022, and this appeal soon followed. R. 1; Dkt. 1.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 8.

Prior to her onset date, Plaintiff underwent two hip replacement surgeries for both her right and left hips. R. 335-36, 370-71. She was also diagnosed with and treated for fibromyalgia, lupus, Raynaud's syndrome, rheumatoid arthritis, and degenerative disc disease. R. 393. At or around the time of her alleged onset date, Plaintiff was receiving steroid injections to the lumbar spine with imaging that showed degenerative disc disease at L1-5 with protrusions at the L2-3 and L5-S1 levels. R. 301. She was recommended to have ongoing injections. R. 536. Physical examination in August 2020 revealed normal flexion, extension, lateral bending but movement in the hips exacerbated lower back pain. R. 296. She had normal balance. R. 296. Plaintiff continued to receive epidural steroid injections through the date last insured. R. 640; 637. At a January 2021 evaluation, Plaintiff reported pain scores of 4 out of 10 (with 10 being the worst pain experienced). R. 532.

Following her date last insured, Plaintiff underwent a trial spinal cord stimulator in April of 2021. R. 529. Plaintiff's physician noted that the trial implant provided "good relief." R. 415. She underwent a permanent spinal cord stimulator implantation in July of 2021. R. 416-17. Her physicians reported that, approximately one month after the surgery, she had "no back pain" and "no more flank pain." R. 653. On September 7, 2021, she received another injection. R. 635. On September 21, 2021, Plaintiff was released from follow-up for her spinal cord stimulator implant with no restrictions. R. 660. On December 8, 2021, Plaintiff received an additional injection, at which time she reported pain at 2-3/10. R. 663, 666.

## **THE ALJ'S DECISION**

The ALJ went through a five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity during the period from her alleged onset

date of April 1, 2020, through her date of last insured of March 31, 2021. R. 23. At step two, the ALJ found severe impairments of hip replacements bilaterally; obesity; and a spinal cord implantation. R. 23.[3] At step three, the ALJ found that Plaintiff did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 . R. 23. The ALJ went on to find that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could lift/carry at most 10 pounds frequently and five pounds occasionally; occasionally perform postural activities, including climbing ramps/stairs, but never climb ladders or have exposure to moving mechanical parts, could have only occasional exposure to extremes of heat and cold. R. 24. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 26. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that she could perform. R. 28. Accordingly, the ALJ found that Plaintiff was not disabled.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813

---

[3] The ALJ also found that Plaintiff had a severe impairment from a thoracic spine fusion, but the parties agree that Plaintiff did not undergo a thoracic spinal fusion. R. 23.

(7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Plaintiff generally argues that the ALJ erred (1) in evaluating Plaintiff's subjective symptoms; and (2) by finding that Plaintiff could perform sedentary work. *See generally* Dkt. 19. The Court addresses each argument in turn.

### A. SUBJECTIVE SYMPTOMS

Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective symptoms for two reasons. First, Plaintiff argues that the ALJ applied the incorrect standard. She points first to the ALJ's recitation of the boilerplate language of "not entirely consistent." But, as the Commissioner points out, the ALJ's language is common boilerplate in most ALJ decisions, and courts have generally rejected the argument that use of such boilerplate language is fatal, so long as the ALJ applies the correct standard in evaluating the claimant's subjective symptoms. *See*, *e.g.*, *Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020) (unpublished); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Here, the ALJ's language is harmless because, as discussed below, he described (and went on to apply) the correct standard in evaluating whether Plaintiff's statements about her symptoms were substantiated by the objective medical evidence and other evidence in the record. R. 24 (referencing 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1520c).

Plaintiff also argues that the ALJ applied the wrong legal standard to her symptoms evaluation when he noted that her "statements about the intensity, persistence and limiting effects of her symptoms…are inconsistent because the records do not support a complete loss of function."

R. 25. The Commissioner argues that this statement is not an application of an incorrect legal standard, but simply a statement that the record did not support a finding of disability.[4] This Court agrees. Moreover, as discussed below the ALJ applied the correct legal standard in determining Plaintiff's subjective symptoms.

Next, Plaintiff argues that the ALJ "provided *no* discussion" of the relevant regulatory factors when evaluating Plaintiff's subjective symptoms. Dkt. 19 at 10 (emphasis in original). This Court disagrees. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); Social Security Ruling 16-3p. An ALJ must justify her evaluation of a claimant's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation. While evaluating Plaintiff's subjective symptoms, the ALJ discussed Plaintiff's course of treatment and concluded that, while Plaintiff's course of treatment supported

---

[4] Plaintiff does not respond to the Commissioner's argument in her reply brief.

her allegations of pain, the record indicated that her treatment was more helpful in alleviating her pain than she alleged. For example, while Plaintiff testified that her injections and spinal cord stimulator provided little to no pain relief, R. 24; R. 43-44, the ALJ observed that medical records revealed that, following her injections near the end of her date last insured, she reported her pain score as a 4 out of 10. R. 25, 532. After her spinal cord stimulator was implanted, Plaintiff reported that the spinal cord stimulator was helpful. R. 25, 652-53. She obtained good pain relief from the trial spinal cord stimulator placed in April 2021. R. 25, 415, 529. And, after her neurosurgeon inserted her permanent spinal cord stimulator in July of 2021, Plaintiff reported that she had no back pain and no more left flank pain. R. 25, 653. The following month her neurosurgeon released her from his care with "no restrictions." R. 25, 652.

The ALJ also considered objective medical evidence in conducting his symptoms evaluation. For example, he noted that Plaintiff's lumbar spine imaging showed degenerative disc disease, and that Plaintiff had some reduced range of motion, tenderness and some loss of strength in her hips, but, that she also exhibited full strength throughout as well as normal balance, fine motor control, and ambulation. R. 24-25, 296. The ALJ also noted that, although Plaintiff testified that she last worked in January 2021 and that she stopped due to pain in her legs and back, clinic notes indicated that Plaintiff left work due to concerns of COVID-19 outbreak and concerns for her connective-tissue impairment. R. 24; R. 451.

Moreover, while the ALJ provided valid reasons for discounting Plaintiff's allegations that she was totally disabled, the ALJ did not completely disregard her complaints of pain and other symptoms. Rather, the ALJ found that Plaintiff's complaints of pain were sufficiently supported to warrant a residual functional capacity ("RFC") at the sedentary level with additional limitations. *Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("[T]he ALJ did not totally discount [the

plaintiff's] testimony regarding how her pain affected her ability to perform certain activities, as evidenced by the ALJ's decision to limit [the plaintiff's] range of work to sedentary when assessing her residual functional capacity."); *Spaulding v. Berryhill*, No. 16 C 6298, 2017 WL 3922878, at *11 (N.D. Ill. Sept. 7, 2017) (same).

Plaintiff alleges that the ALJ committed error nonetheless because he did not discuss her daily activities. This argument is unpersuasive because an ALJ is not required to discuss every regulatory factor in his decision. *See*, *e.g.*, *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming decision of ALJ who discussed only two factors); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (unpublished) (holding that the ALJ need not explicitly discuss and weigh each factor); *John E. v. Kijakazi*, No. 20 C 5784, 2023 WL 4106104, at *7 (N.D. Ill. June 21, 2023) ("But an ALJ is not required to discuss every regulatory factor in her decision."); *Joyce C. v. Kijakazi*, No. 19 C 8514, 2021 WL 4264274, at *7 (N.D. Ill. Sep. 20, 2021) ("An ALJ need not explicitly discuss each factor…").

Plaintiff also argues that the ALJ did not confront evidence that conflicted with the ALJ's conclusions. However, "an ALJ need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (internal quotation omitted). Here, the ALJ discussed both normal and abnormal examination findings, Plaintiff's allegations, the treatment she received and the results of that treatment as reflected in the medical records. While the ALJ found that Plaintiff's allegations of pain did not support her allegations of total disability, he nonetheless found that they supported work at the sedentary level with additional restrictions. Plaintiff does not explain how any evidence she claims the ALJ overlooked compelled a finding of disability.

In sum, when evaluating Plaintiff's subjective symptoms, the ALJ properly considered the regulatory factors and pointed to specific evidence in the record that supports his analysis. R. 24-25. And, although he did not discuss Plaintiff's daily activities, the ALJ included sufficient evidence in his decision to support his evaluation of Plaintiff's allegations of pain. Accordingly, the ALJ's subjective symptom analysis is not patently wrong, and, thus, a remand is not warranted.

### B. RFC ANALYSIS

Next, Plaintiff argues that the ALJ's RFC was not supported by substantial evidence. She notes that, when crafting Plaintiff's RFC, the ALJ declined to give persuasive weight to any medical opinion. The Agency opinions placed Plaintiff at light work and the ALJ instead picked a middle ground RFC of sedentary work. This, Plaintiff argues, improperly created an evidentiary deficit. Dkt. 19 at 13.

A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, medical opinions, and effects of symptoms. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). An evidentiary deficit is created when an ALJ rejects all opinion evidence, and the remainder of the record does not support the limitations imposed by the ALJ in the RFC. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (unpublished).

Here, the ALJ acknowledged that the DDS physicians opined that Plaintiff would be limited to light work and stated that the DDS opinions were "supported by full review of the medical evidence of record through August 2021, and a discussion of clinical evaluation and physical examinations, including that performed by the consultative examiner in April 2021." R. 26. But, while the DDS opinions were supported by the medical record, the ALJ went on to say that the DDS physicians' recommendation of light work was "inconsistent with the claimant's testimony, and the follow-up notes following the stimulator device implantation." R. 26. The ALJ then stated "Here, while the record through date last insured supports an ability to perform light work, the subsequent treatment would indicate improvement was transient." R. 26. Accordingly, the ALJ found that the DDS consultants' opinions were of limited persuasiveness due to inconsistency with the record as a whole, and thus further reduced the claimant to sedentary exertional work with reduced lift/carry capabilities. R. 26. The ALJ was not required to rely entirely on a particular physician's opinion or "choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, an ALJ's RFC is supported by substantial evidence so long as it is based on medical evidence and adequately explained. *See Amey*, 2012 WL 366522, at *13. Here, the ALJ's decision to limit Plaintiff to sedentary work with additional postural limitations was appropriately based on Plaintiff's statements and her medical records, specifically the transient nature of her pain after the placement of the permanent spinal cord stimulator. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (stating that the ALJ's "careful consideration" of the evidence was "shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians…based on his independent review of the full evidentiary record"); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more

limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented").

Plaintiff next argues that the ALJ's reliance on the state agency physicians' opinions was flawed because the DDS physicians' opinions "lacked evidence" of Plaintiff's trial spinal cord stimulator, permanent stimulator via thoracic laminotomy, and spinal injections subsequent to the permanent spinal cord stimulator. Dkt. 19 at 14. This argument is unavailing. Plaintiff's trial spinal cord stimulator, permanent stimulator via thoracic laminotomy, and subsequent spinal injections all occurred after her date last insured.[5] An ALJ is only required to consider evidence up until the date that a claimant was last insured. *See Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 730 (N.D. Ill. 2020) ("While evidence from after the expiration of insured status can be relevant to establish that an impairment existed prior to a claimant's DLI, it does little to establish the severity or limitations stemming from such an impairment") (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005)).

Even so, the administrative record shows that the state agency physician at the reconsideration level *did* have evidence of Plaintiff's trial cord stimulator and permanent stimulator via thoracic laminotomy.[6] R. 80. Even with these records, the DDS physician affirmed that the initial level assessment of light work was correct. R. 80. The only record that the state agency physician did not review were records indicating that Plaintiff received spinal injections in

---

[5] Plaintiff's date last insured was March 31, 2021. R. 28. Plaintiff received the trial stimulator implant in April 2021 (R. 529), the permanent implant in July 2021 (R. 416-17), and subsequent spinal injections in September 2021 (R. 635) and December 2021 (R. 663).

[6] The initial DDS physician had records from Plaintiff's treating physicians through December of 2020. R. 65-66. At the reconsideration level, records were requested from Plaintiff's treating physicians, from April 1, 2019, through July 26, 2021. R. 522; 583; 598. The DDS physician at the reconsideration level received those records on August 3, 2021. R. 80.

September 2021 and December 2021, several months after the permanent spinal cord stimulator was implanted. R. 80.

Still, Plaintiff maintains that the ALJ played doctor by using evidence of the September and December 2021 injections to construct an RFC determination. Dkt. 19 at 24. In making this argument, Plaintiff implies that the ALJ should have submitted evidence of those spinal injections to medical scrutiny. This argument is also unpersuasive. True, an ALJ may not "play doctor" by interpreting "new and potentially decisive medical evidence" without submitting such evidence to medical scrutiny. *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). But not all new evidence is potentially decisive, rather, the question is: whether the new evidence "could reasonably change the reviewing physician's opinion." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (unpublished) ("The issue, then, comes down to whether the new information changed the picture so much that the ALJ err[s] by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report…or whether the updated information is minor enough that the ALJ did not need to seek a second opinion.") (internal quotations omitted). Here, Plaintiff has not shown how the September and December 2021 spinal injections "changed the picture" such that the ALJ needed to submit that evidence to medical scrutiny.

Moreover, Plaintiff has not offered any opinion from a physician recommending RFC limitations greater than those found by the ALJ. This is critical because the Seventh Circuit has stated that "when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *see Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding the fact that no doctor offered any opinion setting sitting limits greater than

...
...

those set by the ALJ a "fundamental problem"); *Hostetter v. Saul*, 841 F. App'x 983, 987 (7th Cir. 2021) (unpublished) (finding the ALJ's determination that the plaintiff had the RFC to perform sedentary work with restrictions supported by the fact that none of the plaintiff's doctors ever suggested that the plaintiff was unable to do sedentary work); *Zoch v. Saul*, 981 F.3d 597, 601-02 (7th Cir. 2020) (finding persuasive that, aside from one physician whose opinion was reasonably rejected, no other physician during the relevant period opined that the plaintiff could not handle sedentary work); *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (unpublished) (finding no error where no doctor recommended any limitations based on the plaintiff's condition).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: February 1, 2024                By: _/s/ Lisa A. Jensen_
                                         Lisa A. Jensen
                                         United States Magistrate Judge